UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

Civil Action No 1:16-cv-10519-RGS

SOUTH BOSTON ALLIED WAR
VETERANS COUNCIL

Plaintiffs

v.

MAYOR MARTIN J. WALSH, MAYOR OF THE
CITY OF BOSTON, in his official capacity, and
POLICE COMMISSIONER WILLIAM B. EVANS,
in his official capacity, and the
CITY OF BOSTON.

Defendants

**FIRST AMENDED COMPLAINT FOR
A DECLARATORY JUDGMENT
AND EQUITABLE RELIEF**

## NATURE OF THE ACTION

1.  This action is brought pursuant to 42 U.S.C. §1983 and the Massachusetts Civil Rights Act M.G.L. Chapter 12 §H, and §I, as the actions of the Defendants, under color of law, and without legal authority, deprived the Plaintiffs of certain fundamental rights, including but not limited to the rights protected by the First, Fifth, and Fourteenth Amendments to the Constitution of the United States, that resulted in injury to the Plaintiffs, and without due process deprived and abridged the Plaintiffs' right of free speech, freedom to assemble, freedom to associate, and their liberty interest protected by the First, Fifth, and Fourteenth Amendments to the United States Constitution, contrary to the Time, Place and Manner Doctrine.

The Plaintiffs are also seeking permanent injunctive relief from the continuing efforts of the Defendants who, by intimidation, coercive and threatening acts directed at the Plaintiffs in order to

control the content of the Veterans privately permitted First Amendment activities, and by violating the mandates of *Hurley v. Irish American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557 (1995).

## JURISDICTION

This action is brought pursuant to:

2. 28 U.S.C § 1331 because the matter in controversy arises under the Constitution and laws of the United States;

3. 28 U.S.C § 1343 (a) (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights....including the right to vote.

4. 42 U.S.C § 1983 – Civil Action for Deprivation of Rights. Every person who, under color of any statute, ordinance, regulation custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section any action of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

## AMENDMENTS TO THE UNITED STATES CONSTITUTION

5. **AMENDMENT I**

Congress shall make no law respecting an establishment of religion, or prohibit the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances.

6. **AMENDMENT V**

   . . . . <u>nor be deprived of life, liberty, or property, without due process of law;</u>

7. **AMENDMENT XIV**

**Section 1.**

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

**Section 5.**

The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article.

8. Massachusetts Civil Rights Act -

   **M.G.L. Ch. 12 Sec. 11H. Violations of constitutional rights; civil actions by attorney general; venue.**

   Whenever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, the attorney general may bring a civil action for injunctive or other appropriate equitable relief in order to protect the peaceable exercise or enjoyment of the right or rights secured. Said civil action shall be brought in the name of the commonwealth and shall be instituted either in the superior court for the county in which the conduct

complained of occurred or in the superior court for the county in which the person whose conduct complained of resides or has his principal place of business.

If the attorney general prevails in an action under this section, the attorney general shall be entitled to: (i) an award of compensatory damages for any aggrieved person or entity; and (ii) litigation costs and reasonable attorneys' fees in an amount to be determined by the court. In a matter involving the interference or attempted interference with any right protected by the constitution of the United States or of the commonwealth, the court may also award civil penalties against each defendant in an amount not exceeding $5,000 for each violation.

9.  **M.G.L. Ch. 12 Sec. 11I.  Violations of constitutional rights; civil actions by aggrieved persons; costs and fees.**

Any person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with, as described in section 11H, may institute and prosecute in his own name and on his own behalf a civil action for injunctive and other appropriate equitable relief as provided for in said section including the award of compensatory money damages. Any aggrieved person or persons who prevail in an action authorized by this section shall be entitled to an award of the costs of litigation and reasonable attorneys' fees in an amount to be fixed by the court.

10. **M.G.L. Ch. 12 Sec. 11J.  Violations of constitutional rights; temporary restraining orders and injunctions; violations; punishment; vacation of order.**

In actions brought pursuant to section eleven H or eleven I, whenever the court issues a temporary restraining order or a preliminary or permanent injunction, ordering a defendant to refrain from certain conduct or activities, the order issued shall contain the following statement: VIOLATION OF THIS ORDER IS A CRIMINAL OFFENSE.

After any such order has been served upon the defendant, any violation of such order shall be punishable by a fine of not more than five thousand dollars or by imprisonment for not more than two and one half years in a house of correction, or both such fine and imprisonment; provided, however, that if bodily injury results from such violation, the violation shall be punishable by a fine of not more than ten thousand dollars or by imprisonment for not more than ten years, or both.

The clerk shall transmit two certified copies of each such order issued under section eleven H or eleven I to each appropriate law enforcement agency having jurisdiction over locations where such defendant is alleged to have committed the act giving rise to the action, and such law enforcement

agency shall serve one copy of the order upon such defendant. Unless otherwise ordered by the court, service shall be by delivering a copy in hand to the defendant. Law enforcement agencies shall establish procedures adequate to ensure that all officers responsible for the enforcement of the order are informed of the existence and terms of such order. Whenever any law enforcement officer has probable cause to believe that such defendant has violation the provisions of this section, such officer shall have the authority to arrest said defendant.

Following the final disposition of a criminal contempt proceeding initiated by the attorney general for violation of an order issued in an action brought by the attorney general under section eleven H, the commonwealth shall move to dismiss any charges brought under this section against such defendant for such violation of the order.

Whenever the court vacate a temporary restraining order or a preliminary or permanent injunction issued under section eleven H or eleven I, the clerk shall promptly notify in writing each appropriate law enforcement agency which had been notified of the issuance of the order and shall direct each such agency to destroy all record of such vacated order, and such agency shall comply with such directive.

**PARTIES**

11.     The Plaintiff, South Boston Allied War Veterans' Council, (hereinafter Veterans' Council) is an unincorporated organization that represents members and volunteers of several veterans' organizations located in South Boston.

12.     Defendant, City of Boston, was incorporated in 1821 as a City and is a subdivision of the Commonwealth of Massachusetts, and is named as a Defendant as any judgement against the Police Commissioner, the Mayor, or any member of the City's administration is a judgement against the City of Boston, and named as a party in order to enforce injunctive relief.

13.     The Defendant, Police Commissioner William B. Evans, (hereinafter Commissioner Evans) of the City of Boston, is named as a Defendant in his official capacity. The policies, customs and practices of the City of Boston have invested the Police Commissioner with the power to determine whether or not

that public activities on the streets of Boston can be safely conducted, consistent with time, place and manner doctrines.

14. The Defendant, Martin J. Walsh, is the Mayor of the City of Boston (hereinafter Mayor Walsh) and is named as a Defendant in his official capacity. Mayor Walsh has the power to issue or to deny the issuance of Parade Permits.

## FACTS

15. The Defendant, Mayor Walsh, publicly announced that as the newly elected Mayor he would use his influence to broker the inclusion of gay groups into the Plaintiffs' privately permitted annual St. Patrick's Day/Evacuation Day Parade, (hereinafter Parade). He also stated that if he was unsuccessful, he would boycott the Parade.

16. A series of meetings were held by the parties prior to the March 2014 Parade.

### First Meeting

The first meeting was organized by Mayor Walsh, in his office, and attending were:

> John J. Hurley, who organized the Parade for over 25 years.
>
> Philip J. Wuschke, Jr. (hereinafter Wuschke) who had been performing the same duties and selection of units that Mr. Hurley had been performing for the past several years.
>
> Attorney Chester Darling, counsel for the South Boston Allied War Veterans' Council.
>
> The Defendant Commissioner Evans,
>
> The Mayor's Chief of Staff.
>
> Two Department heads,
>
> Defendant, Mayor Walsh, and
>
> Boston City Councilor Michael F. Flaherty (hereinafter Councilor Flaherty).

17. At the outset of the meeting, Mayor Walsh announced that he would not march in the Parade until the Veterans' Council made changes in the Parade. He then stated that he had been communicating with an organization named Mass. Equality, and that they wanted to sponsor an LGBT Veterans Group. Mayor Walsh stated that he wanted to march with the Mass. Equality and the LGBT Veterans. Attorney Darling told the Mayor that the Plaintiffs had unanimously voted for a policy that no units in their Parades could have sexual themes. Attorney Darling also advised the Mayor that the Bay Windows publication was then waging a successful campaign to reduce the contributions to the Parade by contacting sponsors who had donated to the parade in the past. John Hurley then told the Mayor that "we won a 9-0 decision at the Supreme Court of the United States that gave us the right to say who marches in our Parades." No agreements were made.

### Second Meeting

18. Mayor Walsh next called Wuschke to a second meeting at his office, in City Hall. Only Councilor Flaherty met with Wuschke. There was more discussion regarding the inclusion of gay groups in the Parade.

19. During the discussions with Wuschke, and while insisting that the Mayor's LGBT groups be included in the Parade, the Mayor stated that he could cancel the Parade permit for "safety reasons".

### Third Meeting

20. Another meeting was held at the home of John Hurley that was attended by Boston City Councilor Flaherty, John Hurley, and Jeff Coakley, owner of Bay Windows, Sue O'Connell, and Wuschke. The only significant exchange was made by Wuschke and the publishers of Bay Windows when he asked why they continued their campaign to defame and defund the Parade.

### Fourth Meeting

21.     The last meeting was organized by Mayor Walsh at his office. Attending were Wuschke, Councilor Michael Flaherty, Congressman Steven Lynch, Bob Folks, Executive Director Kara Coredini from Mass Equality, and two gay veterans. Most of the discussion related to the name that the LGBT Veterans might use. Wuschke and a gay Veteran had a brief discussion relating to their respective flag colors, i.e. red, white and blue, and their rainbow colors. No agreements were made.

22.     On Friday, March 14th, 2014, the South Boston Citizens Association conducted a banquet at the Boston Convention Center. Mayor Walsh and Wuschke were seated on the stage. After the Banquet Mayor Walsh approached Wuschke and he made a proposal. He stated that he was going to put out a press release on Saturday that would say, "Happy St. Patrick's Day from your Mayor Martin J. Walsh, LGBT Vets, and the LGBT Police", but before the Mayor could finish Wuschke interrupted and said "No they will not march in the Parade."

23.     Mayor Walsh then launched into a frenzied verbal attack shouting "Don't fuck me over, you'd better not fuck me over." He shouted the phrases several times. Wuschke responded, "Do you realize that you threatened me five times." There were many people nearby.

24.     Wuschke then went down to the lobby of the Boston Conference Center, and while waiting for his wife to join him he was approached again by Mayor Walsh, who was accompanied by four men. The shouting renewed until Mrs. Wuschke interrupted the exchanges. Wuschke then said to Mayor Walsh "That is not the way to negotiate, Mr. Mayor."

25.     Later that evening Mayor Walsh called Wuschke and apologized and said that he "snapped" and that "we were under a lot of pressure and that I shouldn't have done it." The Mayor did not march in the 2014 Parade.

26. Later that year a special meeting of the Veterans' Council was scheduled without notice of the agenda. The Council by a 5 to 4 vote, invited the OUTVETS group to march in the 2015 Parade. Wuschke immediately resigned as parade organizer and treasurer of the Council.

27. Before the 2015 Parade, Commander Brian Mahoney (hereinafter Mahoney) of the Veterans' Council invited Boston Pride to March.

28. The OUTVETS and Boston Pride groups were only permitted to march holding a waist high banner identifying their groups. They were not permitted to display any rainbow flags, signs, symbols, or any clothing identifying the marchers' sexual orientation.

29. Mayor Walsh conducted a meeting with the Parade organizers regarding the accumulation of snow in South Boston, and he recommended a shortened Parade route for the 2015 Parade.

30. Timothy Duross (hereinafter Duross) was and is the current Parade organizer. Duross told Mayor Walsh that he had assembled the necessary trucks, equipment and personnel that were able to clear the Parade route, with a little help from the City. Mayor Walsh said no. When Duross suggested that they might go ahead and try to clear the snow, the Mayor said that if they did – he would pull the permit.

31. Prior to the 2016 Parade a vote was taken that invited Boston Pride to march again due to the constant pressure from City Hall, and continued threats to "Pull the Parade Permit."

32. The Council has changed its policy regarding their method of voting. Any future votes will be by secret ballot.

33. On February 22, 2016, Commander William Desmond (hereinafter Desmond), Duross as Parade Organizer and Fran Joyce as Parade Staff met with official representatives of the Boston Transportation Department, Boston Police Department, Special Events Staff, Boston Inspectional Services, and MBTA

Police to conduct the usual pre-parade review and mutual approval of the parade route. They, the Council, were then told that the shortened route must be followed in the 2016 parade. After strenuous objections by the Council, Buddy Christopher of Inspectional Services Department suggested they take a second look and ensured the Council that they would be invited back to a follow-up hearing to review. No subsequent meeting was scheduled by City officials.

34. City officials continued to request submissions by the Council, relating to the Council's desire to have the traditional parade route restored.

35. A letter was written by Duross to Joyce Judge, of the Special Events Office, per her request, enumerating all of the reasons why the traditional parade route was important to the members of the Council and members of the community.

36. Again, the City did not schedule their follow up meeting.

37. An appeal for reconsideration of the decision that the parade must follow the shortened route was made by Duross in his letter dated February 25, 2016, addressed to Boston Transportation Department Commissioner Gina Fiandaca.

38. The Council was stunned to receive an official permit by e-mail, from Tim Bradeen, Senior Traffic Engineer of Boston Transportation Department, on Friday, February 26, 2016 at 4:55pm, which mandated the shortened route for the Parade. In this permit, the Note section provided a basis for the decision which was "to mitigate public safety and congestion concerns", as is required by the Rules and Regulations of the Transportation department, Article VIII on Parades, Processions and Formations (attached), when any modification is made to the permit.

39. Parade organizer Duross objected to the issued permit by e-mail and, in response, Tim Bradeen declared that the issued permit was final and not open to reconsideration.

40. During a media interview, Mayor Walsh announced the basis of the shortened route was due to "public safety" and the City's concern regarding expenses.

41. The recognition of historic landmarks, particularly Dorchester Heights, must be cherished and continued, as is poignantly described by Parade organizer Duross in his overview of the nexus between the neighborhoods of South Boston and the annual St. Patrick's Day / Evacuation Day Parade. He describes the Dorchester Heights location as the symbol of the sacrifices of so many South Boston heroes, both past and present, that perished fighting for the very rights and values embodied in our Constitution.

42. The City of Boston provides funds to support several cultural events in the City. The Veterans' Parade, Columbus Day Parade, the Gay Pride Parade, the Dorchester Day Parade, etc. When Duross sought the annual amount of $9,600 from the Special Events Department, he was advised by Mr. Kenneth Brissette, Director of Tourism, Sports and Entertainment of the Special Events Dept., that the Parade would only receive $6,000 for the 2015 and 2016 Parades. He would not explain the basis for the reductions to Duross.

43. An organization named Veterans' for Peace, a protest parade, has been trying to march in the Plaintiffs' Parade for years. Years ago, a police captain against specific instructions, inserted the Veterans' for Peace at the end of the Parade that resulted in ***South Boston Allied War Veterans Council, et al v. City of Boston 297 F. Sup. 2nd 388 (2003).***

44. The group has started an action in Federal Court seeking to overcome the terms of the permanent injunction that requires the Boston Police Department to maintain a distance of one mile from the end of the Plaintiffs Parade to the beginning of the Veterans' for Peace Parade.

45. Recently, the Veterans' for Peace sought a Temporary Restraining Order, unsuccessfully, that would have permitted them to start their Parade at 12 o'clock, which is one hour before the Plaintiffs' Parade - *Veterans' for Peace v. City of Boston, C.A. 15-10346-LTS.*

46. During the litigation, Commissioner Evans, who arrived with Patrick Scanlan, Police Superintendent Bernard O'Rourke, and two uniformed officers, appeared before the Veterans' Council and he urged them to accept the Veterans' for Peace in the Plaintiffs' Parade on certain terms.

47. After the rejection of the compromise presented to the Veterans' Council, they learned that the City had shortened their 2016 Parade route.

48. On March 11, 2016, Mayor Walsh organized a meeting in his office at City Hall with the Veterans Council to discuss the March 20th, 2016 Parade Route.

49. Prior to the meeting, Mayor Walsh exited his office and questioned Duross as to why he brought an attorney. Duross answered that he had retained Attorney Darling as counsel. Mayor Walsh replied, "I will meet with you, but no attorneys." Duross did not enter the Mayor's office but he remained with Attorney Darling outside, for the duration of the meeting.

50. In attendance were Mayor Walsh, Michael Donovan, State Senator Linda Dorcena Forry, Representative Nick Collins, Jerome Smith, Head of the Department of neighborhood Services, and Chris Hamilton.

51. Representative Nick Collins and Council Member Chris Hamilton voiced their concerns about the Gold Star Mothers, who are hosted by the Perkins Post on 4th Street, and paying tribute to our Veterans' Posts, and Dorchester Heights being the highlight of our Evacuation Day Parade. Mahoney noted that the Parade should pass Wacko Hurley's house as it is dedicated to him. Commander Desmond then cited the historical significance of Dorchester Heights and March 17th.

52. Mr. Jerome Smith, head of the Department of Neighborhood Services, stated that the March 17th exercises that are done on Dorchester Heights are sufficient tribute to Dorchester Heights and Evacuation Day.

53. Brian Mahoney suggested another route that would go Broadway to L Street and up Fourth Street by Wacko Hurley's house, and the Perkins Post to Farragut Road.

54. Mayor Walsh said "Due to the expertise of Commissioner Evans, I have decided to keep the short route."

55. During the 2016 Parade, Commissioner Evans approached the Veterans' for Peace protest location along the Parade route, and spoke to Patrick Scanlon saying "next year Pat, next year".

56. On March 14, 2016 during a hearing before this Honorable Court relating to the Plaintiffs' Request for a Temporary Restraining Hearing, Commissioner Evans testified. He acknowledge that he was the person that directed the Boston Transportation Department to issue the Parade Permit to the Plaintiffs for their March 20th, 2016 Parade.

57. At the March 14th, 2016 Hearing, no evidence or facts were presented that demonstrated that a compelling State interest required Commissioner Evans to shorten the Parade route. The testimony confirmed that the Boston Police Dept. had adequate resources and personnel to conform to their usual operational standards, especially when the Veterans' for Peace Parade that was scheduled, did not march.

58. Also, there was no explanation of what the term "mitigate public safety" actually meant.

59. Following that the Plaintiffs filed their original Complaint on March 14th, 2016. On the same day a call was made to the Parade organizer, Duross, from the Consumer Affairs and Licensing Board advising the Parade organizers that liability insurance was required in the amount of Two Million Dollars,

which had to be purchased before the Parade, for a one day entertainment liability policy. A form was sent via E-mail.

60. Attorney Darling called the Licensing Board and received a call from Christine Pulgini, the Director of the Board. Attorney Darling was advised that if the insurance policy was not purchased, that the Plaintiffs' Parade Permit would be pulled.

61. Attorney Darling called counsel for the Defendants and was advised that the Plaintiffs did not have to obtain insurance for the 2016 Parade.

62. Pursuant to this Court's Order, the Veterans' Parade completed its traditional route. When the Parade entered the second half of the town, it passed by the Perkins Post, where the Gold Star Mothers gathered. It then passed by a fire house that hosted a group of Shriners Hospital patients, and it marched through neighborhoods where children grew up, some going to war, and some not returning.

63. It then passed by Dorchester Heights, the iconic historical site. It also proceeded to, and paused in front of the home of the recently deceased Parade organizer, John J. Hurley, where Mrs. Hurley and her family were assembled on their porch, and a bagpipe band played a soulful rendition of Amazing Grace.

## COUNT 1

### Violation of 42 U.S.C. §1983 – South Boston Allied War Veterans Council v. Commissioner William B. Evans

64. Plaintiffs repeat and reassert the allegations in the above paragraphs and incorporates them by reference as if fully and completely set forth herein.

By ordering the Boston Transportation Department to issue a Parade Permit that reduced the Plaintiffs' traditional Parade route for their St. Patricks' Day/Evacuation Day Parade, attributed to "mitigation of public safety" which was scheduled for March 20, 2016, the Defendant Police Commissioner William B. Evans, under color of law, without authority, and without due process

deprived the Plaintiffs of their fundamental rights protected by constitutions and laws of the United States of America, and the Commonwealth of Massachusetts, and in violation of 42 U.S.C. 1983.

The Parade Permit issued to the Plaintiffs on February 26th, 2016 reduced the Parade to half its size and provided as a basis for this decision concerns regarding "mitigation of public safety and congestion concerns".

During a Hearing before this Court on March 14th, 2016 the Defendant Commissioner William B. Evans offered no evidence that a threat to significant or compelling State interests were in jeopardy. There was testimony that the Boston Police Department had sufficient resources to maintain public safety consistent with previous operational plans.

The Defendant, Commissioner William B. Evans, under color of law, with no legal authority, and without due process, deprived the Plaintiffs of their fundamental rights of free speech and assembly and expressive association, and they were deprived of due process by the prior restraint of their complete activity protected by the First, Fifth and Fourteenth Amendments to the Constitution.

WHEREFORE, the plaintiffs respectfully demand that a judgment issue declaring that Commissioner Evans violated the Plaintiffs' fundamental rights in violation of 42 U.S.C. 1983, and order the Defendant Commissioner Evans to pay costs, and reasonable attorney's fees, pursuant to 42 U.S.C. 1988, and any further relief that this Honorable Court deems appropriate and just.

## COUNT 11

### South Boston Allied War Veterans' Council v. Mayor Martin J. Walsh
### Massachusetts Civil Rights Act - M.G.L. Chapter 12 §H and §I

65.     Plaintiffs repeat and reassert the allegations in the above paragraphs and incorporates them by reference as if fully and completely set forth herein.

The Defendant, Mayor Martin J. Walsh has, since 2014, continuously attempted to control the content of the Plaintiffs' annual, privately permitted St. Patrick's Day/Evacuation Day Parade.

The Mayor of Boston has the authority to issue or not issue parade permits in the City of Boston, and Mayor Walsh has repeatedly attempted to alter or control the contents of the Plaintiffs' Parade, by acts which are violations of the time, place and manner jurisprudence and forbidden by the mandates in *Hurley v. Irish American Gay, Lesbian and Bisexual Group of Boston, 515 U.S. 557 (1995)*, and the Massachusetts Civil Rights Act, Ch. 12 §H and §I.

The repeated threats by Mayor Walsh to cancel the Plaintiffs' Parade Permits, are clearly acts prohibited by the Massachusetts Civil Right Act, that prohibits any interference, or attempted interference with the exercise of citizens' rights by threats, intimidation or coercion pursuant to M.G.L. Chapter 12 §H and §I secured by Federal and State Constitutions.

WHEREFORE the Plaintiffs respectfully demand that this Honorable Court issue a judgment declaring that the Defendant, Mayor Martin J. Walsh has, by his actions, violated the Plaintiffs' rights, secured and protected by the First, Fifth and Fourteenth Amendment to the United States Constitution, and the Massachusetts Civil Right Act - M.G.L. Chapter 12 §H and §I, and further to issue a permanent injunction enjoining Mayor Walsh from attempting to, or interfering with the exercise of the Plaintiffs' secured rights by threats, intimidation or coercion, and order the Defendant Mayor Martin J. Walsh to pay costs, and reasonable attorney's fees, pursuant to 42 U.S.C. 1988, and other relief that this Honorable Court deems appropriate and just.

## COUNT III

### South Boston Allied War Veterans' Council v. The City of Boston – Equitable Relief

66. Plaintiffs repeat and reassert the allegations in the above paragraphs and incorporates them by reference as if fully and completely set forth herein.

The City of Boston has been named as a Defendant for the following reasons:

The Defendant Commissioner William B. Evans establishes policies regarding the time, place and manner of parades and processions on the streets of Boston. Commissioner Evans is responsible for approving operational plans for public events, with an emphasis on public safety. The Commissioner also has the authority to modify any parade permits consistent with his authority to establish public policy in public safety matters.

The Defendant, Martin J. Walsh, also has the authority to issue or not issue parade permits.

The facts in his case demonstrate that the Plaintiffs' secured rights, protected by the United States Constitution, the Massachusetts Constitution, and Federal and State laws have been deprived and abridged by the Defendants.

Other members of the City Administration have demonstrated animus toward the Plaintiffs. The secured rights of the Plaintiffs have been interfered with or attempted to be interfered with by

members of the City of Boston by either intimidation, coercion or threats, in violation of the Massachusetts Civil Rights Act.

67. WHEREFORE the Plaintiffs respectfully demand that the Defendants, and the City of Boston, its officers, departments, employees, servants and agents be permanently enjoined from attempting to control the content of the Plaintiffs' Annual Saint Patricks' Day/Evacuation Day Parade, by intimidation, coercion or threats to the members, and associates of the South Boston Allied War Veterans Council, and the Plaintiffs request that this Honorable Court order the Defendant City of Boston to pay costs, and reasonable attorney's fees, pursuant to 42 U.S.C. 1988, and any additional relief that this Honorable Court deems appropriate and just.

Respectfully submitted,

_____
Chester Darling BBO # 114320
Attorney for the Plaintiffs
9 Mayflower Drive
Andover, MA 01810

Dated: July 29, 2016

## CERTIFICATE OF SERVICE

I, Chester Darling, Counsel for the Plaintiffs, the South Boston Allied War Veterans Council, hereby certify that on August 1st, 2016, I served in hand, copies of the following documents to Attorney Peter M. Geraghty, Lead Counsel for the Defendants Mayor Martin J. Walsh, et al, City of Boston Police Dept., One Schroeder Plaza, Boston, MA 02120:

1) Plaintiffs' Opposition to Defendants' Motion to Dismiss Plaintiffs' Complaint;
2) Memorandum in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss Plaintiffs' Complaint;
3) Plaintiffs' Motion for Leave to File Their First Amended Complaint;
4) First Amended Complaint for a Declaratory Judgment & Equitable Relief;
5) Plaintiffs' Memorandum in Support of Their First Amended Complaint; and
6) A copy of Certificate of Service.

Respectfully submitted,

Chester Darling, BBO #114320
Attorney for the Plaintiffs
9 Mayflower Drive
Andover, MA 01810
Tel.: (978)475-2520
E-mail: chesterdarling@comcast.net